## Patrick J. O'Hare v. City of Chicago.

### Gen. No. 12,257.

1. ORDINANCE—*when prima facie valid.* The city council has power to adopt a dram-shop ordinance which in addition to a fine provides as an additional punishment that a person convicted of its violation shall have his license revoked and shall not be permitted for a period of two years again to obtain such a license.

Prosecution for violation of dram-shop ordinance. Appeal from the Criminal Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1905. Affirmed. Opinion filed March 6, 1906.

**Statement by the Court.** Appellant was prosecuted before a justice of the peace for unlawfully maintaining and conducting a dram-shop or place where intoxicating liquors were sold, in alleged violation of section one of "An Ordinance for revising and consolidating the ordinances of the City of Chicago," enacted December 9, 1901. A jury of six men returned a verdict of not guilty. The case was then taken to the Criminal Court. The abstract is not carefully made. It fails to show the judgment appealed from, but it appears from what purports to be the bill of exceptions that a jury found appellant guilty and assessed a penalty of ten dollars, and that the court " gave judgment on the verdict against the defendant." Appellant was allowed an appeal to this court and filed an appeal bond.

Section one of the ordinance introduced in evidence and under which this proceeding was had provides, "that no person * * * operating, maintaining or conducting a saloon, dram-shop or other place in which * * * intoxicating liquors are sold or given away shall establish or maintain in connection with such saloon, dram-shop or other place, either as a part thereof or as an adjunct thereto, any

wine room or private apartment, the interior of which is shut
off from the general public view by doors, curtains, screens,
partitions or other device of any kind whatsoever." Section 2
prohibits any one from conducting a restaurant or victualling
place to serve or permit to be served any intoxicating liquor
in any private apartment maintained as an adjunct to such
restaurant to any number of persons less than four unless all
of such smaller number be of the same sex. Section 3 pro-
vides penalties for violation of the preceding sections, namely
a fine not less than $10 nor more than $100 for each offense,
and further provides as follows: "In addition to the penalty
above fixed such person or corporation shall have his, her or
its license revoked, and shall not be permitted to again ob-
tain a license to operate, conduct or maintain a saloon,
dram-shop, restaurant, cafe, dining room, ordinary or victu-
alling place, or any other place at or in which malt, vinous
or intoxicating liquors are sold, given away or otherwise
dealt in within the limits of the city of Chicago for a period
of two years from and after the date of the conviction of any
such person or corporation of the violation of any of the pro-.
visions hereof."

M. R. HARRIS, for appellant.

HOWARD S. TAYLOR and JAMES DONAHUE, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It appears from the evidence that appellant maintained
dining rooms on the second floor of the building on the first
floor of which he conducted a saloon in which intoxicating
liquors were sold. About 8 o'clock in the evening of October
23, 1903, three men and two women entered by a stairway
in the rear of appellant's place of business and proceeded to
the dining rooms on the second floor. One of the men ac-
companied by one of the women went into one room and
another man and woman entered another room. These rooms
were in size about ten by ten or twelve feet and were fur-
nished with two or four chairs and a small round table. In
one of the rooms the occupants ordered a drink of whiskey

and a bottle of beer which was supplied by a colored waiter and was drank. When the waiter went out he closed the door. The colored waiter was answering and serving orders in both rooms. He went back and forth between the saloon down-stairs and the dining rooms above. In the room occupied by the second couple were two chairs and a small table. There also liquor was served by the colored waiter, but it was only tasted, not drank. The visitors to the place were apparently acting the part of detectives. At the conclusion of the evidence in behalf of the city, appellant's attorney moved the court to instruct the jury to find a verdict in favor of the defendant. The court denied the motion.

Evidence was then introduced in behalf of appellant tending to show that an ordinary restaurant was conducted on the second floor, the entrance to which, front and rear, are separate from the saloon. Appellant himself testified that he had no wine rooms as a part of his saloon nor as an adjunct thereto. There is, however, no material controversy over the facts. One of appellant's witnesses admits that drinks had been served to him and a party with him composed of both sexes in one of these rooms. The dining rooms, eight in number, on the second floor were conducted by appellant, who conducted also the saloon below, and it is clear that drinks from the saloon were furnished to patrons of the cafe or restaurant, whether such patrons ordered anything to eat from the restaurant or not. The evidence tends to show that the rooms on the second floor were in part at least maintained as wine rooms or private apartments used for such purpose, which were shut off by doors from the view of the general public, and that appellant permitted intoxicating liquors to be served in such private apartments maintained as a part of the restaurant to persons less than four in number and of different sexes, in violation of the ordinance.

It is contended that the ordinance is invalid and that it was error therefore to permit its introduction over appellant's objection. This contention is based upon the provisions of section 62, paragraph 96, art. 5, chap. 24 R. S., granting to

city councils the power to pass all ordinances, rules and regulations proper or necessary to carry into effect the powers granted to cities or villages, with such fines and penalties as the city council shall deem proper, provided no fine or penalty shall exceed $200 and no punishment shall exceed six months in jail. It is said that this provision of the statute "leaves it free from doubt that penalties by the way of fine, was the mode intended to compel an observance of ordinances restricting, prohibiting and regulating the sale of intoxicating liquors." City of Pekin v. Smelzel, 21 Ill., 464–468. The charter provision of which this was said in 1859 was very different from that above referred to. It is claimed, however, that the ordinance in controversy is void, in that it provides in addition to the penalty by fine to be imposed upon conviction for its violation, that the person or corporation so convicted shall have his, her or its license revoked and shall not be permitted to again obtain a license to keep a saloon, dram-shop or restaurant, etc., within the city limits for two years after such conviction. The same section of the statute confers (paragraph 4, sec. 62, art. V, chap. 24) upon the city council the power "To fix the amount, terms and manner of issuing and revoking licenses;" and by paragraph 46 the city council is empowered "to license, regulate and prohibit the selling or giving away of any intoxicating liquors," etc. It is apparent therefore that the power to prescribe the manner of revoking licenses is specially conferred upon the city council by the same section relied on by appellant's attorney, prescribing the nature and amount of the fine or penalty and the term of imprisonment which the city council may impose to carry into effect the powers granted to cities and villages. The provision for revocation of licenses here called in question is strictly within the power given by said paragraph 4. It may be enforced by officers of the city charged with such duty. Such revocation is "in addition to the penalty" fixed by the ordinance and a consequence of conviction, not a part of the penalty to be assessed by the jury. Ballentine v. State, 48 Ark., 45–49. We are of opinion that the ordinance in question is a valid exercise by

the city council of the powers granted.   Among cases which support these views are Wiggins v. City of Chicago, 68 Ill., 372–378; Schwuchow v. The City of Chicago, 68 Ill., 444–447; Launder v. City, 111 Ill., 291–295; The People ex rel. Morrison v. Creigier, 138 Ill., 401.

Objection is made to the first instruction in that it told the jury if they believed from the evidence that appellant maintained at the time and place referred to as an adjunct to his dram-shop "any wine room or private apartment" shut off from general public view he should be found guilty. While a close analysis may find fault with the words "private apartment" as used in the ordinance and in the instruction, it is apparent from the connection that the words are intended to include private apartments of the nature of wine rooms, and there is no reason to suppose that the jury were misled thereby.   It is apparent from what we have said that we do not deem it error to have refused to instruct the jury to find the defendant not guilty.

We have considered the other objections urged, but find no material error in the record.   The judgment of the Criminal Court will therefore be affirmed.

*Affirmed.*