## CITY OF CHICAGO

### *v.*

### E. J. BROWNELL.

#### *Filed at Ottawa June 19, 1893.*

1. MUNICIPAL CORPORATIONS—*prohibiting book-making and pool-selling.* Under the forty-fifth clause of section 1, article 5, of the act concerning cities and villages, a city council has the power, within the corporate limits, to forbid and punish, by ordinance, the acts mentioned in the act of May 31, 1887, entitled "An act to prohibit book-making and pool-selling."

2. GAMING—*validity of ordinance.* An ordinance of a city to prohibit book-making and pool-selling within the corporate limits, and which imposes a fine on any person violating its provisions, will not be rendered invalid from the fact that its provisions are not to apply to certain localities in the city, and such fact does not confer upon any person the right to do the forbidden acts in such localities.

3. An ordinance which provides for the punishment of book-making and pool-selling within the city generally, but exempts certain places under the control of incorporated associations, such as inclosures for fairs or race tracks at particular times, from its operation, in no sense authorizes or sanctions book-making or pool-selling in the excepted places at the times mentioned. It simply makes no provision for the punishment of those who may do the acts in these inclosures at such times.

4. SAME—*ordinance discriminating between persons.* An ordinance is not void for unequal or partial discrimination in its operation which exempts persons at certain times, in certain places, from punishment for gaming, etc., when the party complaining is not thereby deprived of any right enjoyed by others. No person has a right to engage in the business of book-making or pool-selling, which the State or municipal corporation is bound to protect, and hence an ordinance imposing a penalty for engaging therein in certain places can not be said to discriminate against him.

WRIT OF ERROR to the Appellate Court for the First District; —heard in that court on writ of error to the Criminal Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

Mr. JOHN S. MILLER, and Mr. GEORGE A. DuPUY, for the plaintiff in error.

Messrs. KNIGHT & BROWN, for the defendant in error.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

On the 29th day of April, 1890, the defendant in error was convicted, before one of the justices of the peace of Cook county, of the violation of an ordinance of the city of Chicago, and judgment was entered against him for the sum of $100 and costs of the prosecution. He appealed to the Criminal Court of Cook county, and that court, on a trial of the case, held the ordinance, under which he was prosecuted, illegal and void, and discharged him. Plaintiff in error prosecuted an appeal to the Appellate Court for the First District, where the judgment of the Criminal Court was affirmed. This appeal is from that judgment of affirmance.

The only question in the case is as to the validity of the ordinance for a violation of which defendant in error was prosecuted. It was regularly passed by the city council of the city of Chicago on the 16th day of September, 1889, and is an exact copy of an act of the General Assembly of this State, approved May 31, 1887, entitled "An act to prohibit book-making and pool-selling," except that the language was so modified as to make it applicable only to the territorial limits of said city. The ordinance is as follows:

"*Be it ordained by the city council of the city of Chicago:*

"SECTION 1. That any person, persons or corporations who keeps any room, shed, tenement, tent, booth or building, or any part thereof, or who occupies any place upon any public or private grounds within this city, with any book, instrument or device for the purpose of recording or registering bets or wagers or of selling pools, or any person who records or registers bets or wagers or sells pools upon the result of any trial or contest of skill, speed or power of endurance of man or beast, or upon the result of any political nomination, appointment or election, or, being the owner, lessee or occupant of any room, shed, tenement, tent, booth or building, or part

5—146 ILL.

thereof, knowingly permits the same to be used or occupied for any of these purposes, or therein keeps, exhibits or employs any device or apparatus for the purpose of recording or registering such bets or wagers or selling of such pools, or becomes the custodian or depositary, for hire or privilege, of any money, property or thing of value staked, wagered or pledged upon any result, shall be fined in a sum not less than $50 nor exceeding $200 : *Provided, however,* that the provisions of this ordinance shall not apply to the actual enclosure of fair or race-track associations that are incorporated under the laws of the State, during the actual time of the meetings of said associations, or within twenty-four hours before any such meetings."

It is not contended that the invalidity of this ordinance was shown by any extraneous evidence introduced on the trial. The forty-fifth clause of section 1, article 5, of the act entitled "An act to provide for the incorporation of cities and villages," (1 Starr & Curtis, par. 63, chap. 24, p. 467,) authorizes the city councils of cities of this State, organized under said act, "to suppress gaming and gambling houses, lotteries, and all fraudulent devices and practices for the purposes of gaming or obtaining money or property." That the city council of the city of Chicago had the power, under this statute, to forbid and punish the acts mentioned in this ordinance, is not and can not be denied. Unless, therefore, the ordinance shows, upon its face, an abuse of that power it must be upheld.

Counsel for defendant in error, as we understand, contend it is void because it violates the rule that all ordinances must be impartial, and they liken it to an ordinance which, under the same circumstances, makes an act done by one person penal, but by another not. They say it is an "attempt to legalize or give authority of law to book-making and pool-selling in certain places within the city of Chicago, and to prohibit and suppress the same in other places within said city," and this construction seems to have been adopted by the Appellate Court, the ordinance being there treated as conferring,

by implication, "upon some, privilege to do what is prohibited to others." This position is based upon the assumption, that by the concluding clause or proviso in the ordinance, book-making and pool-selling are made lawful within "the actual enclosures of fair or race-track associations that are incorporated under the laws of this State, during the actual time of meetings of said associations, or within twenty-four hours before such meetings." Does the fact, that the provisions of this ordinance are not to apply to certain localities in the city, confer upon any person the right to do the forbidden acts in those localities? Certainly not. All that can be properly said as to the discriminating effect of the ordinance, taken as a whole, is, that it provides for the punishment of book-making and pool-selling within the city generally, but exempts certain places, under the control of incorporated associations, at particular times, from its operation. It in no sense authorizes or sanctions book-making or pool-selling in the excepted places at the times mentioned, but simply makes no provision for the punishment of those who may do the acts within those enclosures at such times. The ordinance does not in terms prohibit the acts which are punishable, but treats them throughout as already being unlawful, simply fixing the penalty.

In the case of *The State* v. *Burgdoerfer*, decided by the Supreme Court of Missouri, and reported in the 14th volume of Lawyers Annotated Reports, 846, it appeared that on April 1, 1891, an act of the General Assembly of that State was approved, entitled "An act to prohibit book-making and pool-selling," which provided that "every one shall be guilty of a misdemeanor who keeps rooms for book-making or pool-selling upon the result of any trial or contest of skill or powers of endurance of man or beast which is to take place beyond the limits of this State, or who makes books or sells pools upon such event, or who makes books or sells pools upon the result of any political nomination, appointment or election, wherever held." The defendant, who was prosecuted

for a violation of that act, insisted that it was unconstitutional, in that the title did not express its subject, the title being "an act to prohibit," while the body of the statute "regulates book-making," and therefore the title did not contain the subject of the act, within the meaning of the constitution of the State, and the court stated the question for decision to be, "Does this act prohibit or regulate book-making and pool-selling?" and said: "If it is one of prohibition, and this is clearly expressed in the title, the act is valid. On the other hand, if it is one of regulation, it is invalid." It was held, in a well-reasoned opinion by THOMAS, J., that the act was valid, and the fact, that book-making and pool-selling were not prohibited by the act on events to occur in the State, did not make it an act "regulating or permitting the same to be done." It is there said: "There is a radical and fundamental distinction between a failure to provide punishment for an act and the sanction of it," and many cases are cited in support of the distinction, which we think are in point. So we say here, the fact that the ordinance, by the proviso, is not to apply to "the actual inclosures of fair or race-track associations," etc., in no sense makes it an ordinance authorizing, sanctioning or approving, the selling of pools, or book-making, within the actual enclosure of fair or race-track associations.

But it seems to be thought, that by failing to provide for the punishment of the offense in the excepted places at all times, the ordinance is unjust and oppressive,—that it operates unfairly upon the citizens of the city,—and *Lake View* v. *Tate*, 33 Ill. App. 78, and 130 Ill. 247, is cited as an authority sustaining the position. In that case the general rule was applied by both this and the Appellate Court, to the effect that all city ordinances must be reasonable and consistent with the laws of the State, and must not be oppressive, unequal or unjust, or partial or discriminating in their operation. That is to say, as applied to that case, a city ordinance which limited the speed of railroad trains on one road running

through the city, but permitted others to run without limit, there being no circumstances making it necessary to apply a different rule to the respective roads, was unreasonable and void, because it unjustly discriminated against the railroad company the trains of which were limited in their speed. The same rule is announced in *Chicago* v. *Rumpff*, 45 Ill. 90, and *Tugman* v. *Chicago*, 78 id. 405. See Dillon on Mun. Corp. (3d ed.) secs. 319, 320, 322. The attempt to apply that rule to this case proceeds upon the untenable ground that, but for the ordinance in question, the defendant in error would have had the right to do the act punishable by its provisions. On the contrary, the ordinance took away from the citizens of the city of Chicago no right which they had before it was passed. The statute of the State had already made the acts named in the ordinance unlawful. Defendant in error had no better or greater right to engage in book-making or pool-selling before the ordinance was adopted than afterward. It is difficult to see how, even in the absence of the statute of which this ordinance is a copy, the defendant in error could have had a legal right to engage in the business made penal by the statute, as has a citizen to sell meats in a city or a railroad company to run its trains. But whether or not, in the absence of the act of 1887, a person could be punished for book-making or pool-selling in this State, it seems clear no right existed to engage in that business which the State or a municipal corporation could be called upon to protect, for the reason that no one could patronize such a business without being guilty of a violation of the statute against gaming. How, then, can defendant in error say this ordinance unjustly discriminates against him? What legal right has been taken from him or impaired?

But again, if it were admitted that the ordinance, by implication, sanctions book-making, etc., within "the actual enclosures of fair or race-track associations that are incorporated under the laws of the State," etc., it does not appear that defendant in error, or any one else, is discriminated against.

If any one can lawfully engage in that business in those places at such times, for anything appearing in this ordinance defendant in error and all other persons so disposed can do the same. On the principle that a city council may discriminate between different localities within the city limits in granting license to sell intoxicating liquors, "making no distinction between persons, but between places, only," as was held in *City of East St. Louis* v. *Wehrung*, 46 Ill. 393, this ordinance would be valid in any view which can be taken of it.

The validity of the statute from which the ordinance is copied is not questioned, nor are we able to discover any substantial grounds upon which it could be, and yet we are asked to hold that an ordinance of the city of Chicago, passed under ample power, the object of which is to enforce that statute precisely as the legislature made it, is unreasonable, unjust and void. Whatever may have been the object of the legislature in adding the proviso to the statute, whether to commit to fair and race-track associations, duly incorporated, the duty, under their charters, of prohibiting the species of gambling named in the body of the act within their actual enclosures during the actual time of their meetings and for twenty-four hours prior thereto, or to leave that matter to be regulated entirely by such associations, or intended that in those places the offense should be punishable under the statute against gaming, it can not be given the effect of preventing municipal corporations throughout the State, in which grounds of such association happen to be located, from enforcing the salutary provisions of the act by ordinance. No valid legal objection has been, or, in our opinion, can be, urged against the ordinance under which defendant in error was convicted.

The judgment of the Appellate Court will be reversed, and the cause remanded to the Criminal Court of Cook county, with directions to proceed in conformity with the views herein expressed.

*Judgment reversed.*