John H. Hagerty et al., Appellees, v. City of Chicago et al., Appellants.

**Gen. No. 37,427.**

Heard in the first division of this court for the first district at the December term, 1933. Opinion filed March 5, 1934. Rehearing denied March 19, 1934.

WILLIAM H. SEXTON, Corporation Counsel, for appellants; LEON HORNSTEIN and MICHAEL C. ZACHARIAS, Assistant Corporation Counsel, and STEPHEN LOVE, of counsel.

VERNON R. LOUCKS, A. J. HENNINGS and SIMS, STRANSKY & BREWER, for appellees.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Complainants, who are taxpayers and property owners along Crawford avenue, a north and south street extending across the City of Chicago, filed their bill of complaint to enjoin the city and its officers from carrying into effect an ordinance passed by the city council and approved by the mayor which changed the name of Crawford avenue to Pulaski Road. A temporary injunction was issued as prayed for in the amended verified bill and defendants prosecute this appeal.

So far as it is necessary to state the facts for the purpose of this decision, they are that in 1889 certain property was annexed to Chicago and the street in question was named after Peter Crawford, the first settler in that section, which was then known as Crawfordville; that the street has been continuously known as Crawford avenue except for a short time when it was officially changed to 40th avenue, but on account of the great confusion this change caused to the public and damage to the property owners along the street, it was again officially renamed Crawford avenue in 1913. Generally speaking, the further allegations are that a number of property owners and tenants along the street have gone to great expense in advertising their businesses by radio and otherwise, and have derived large revenue from such businesses, which will be greatly reduced, if not entirely wiped out, on account of the confusion as to location of the particular businesses if the name of the street is changed to Pulaski Road; that the owners of 76 per cent of the property fronting on the street have protested in writing to the city council against the change; that no one

on the street, so far as complainants are advised, was in favor of the change; that many public, private and civic organizations of the city adopted resolutions protesting against the change; that when the ordinance in question was being considered by the city council it was debated by those who favored and those who opposed it; that the only reason advanced in support of the change was that "certain persons of Polish birth in the City of Chicago" desired to honor a national hero, a soldier of the Revolutionary war, and thereby gain recognition for the Polish people, and that the city council in passing it did so for political purposes only.

It was further alleged that it will cost several thousand dollars of the taxpayers' money to carry the ordinance into effect by changing street name plates, etc., and that the city's finances are such as to make the expense wholly unwarranted.

While there is no order referring the matter to a master in chancery, we find in the abstract and record what is designated a "decision" of a master, which takes up 15 printed pages of the abstract and is in the form of an opinion. The bill is analyzed, numerous authorities are cited and discussed, and there are findings of fact which purport to be made by the court; there is no recommendation to the chancellor, but the "decision" concludes: "Accordingly the defendants (naming them) are hereby restrained and enjoined from carrying out into effect the ordinance purporting to change the name of 'Crawford Avenue' to 'Pulaski Road' and from taking down and removing the street name plates on said Crawford Avenue and from erecting any other street name plates until the further order of this court."

The power of a master is ministerial and not judicial. *Hards v. Burton,* 79 Ill. 504; *Bottom v. City of Edwardsville,* 308 Ill. 68. The law does not contemplate

that a master prepare an opinion; *Manowsky v. Stephan,* 233 Ill. 409; nor can he issue an injunction; *Bottom v. City of Edwardsville, supra.* However, the temporary restraining order, from which this appeal was prosecuted, was entered by the chancellor.

One of the powers conferred on city councils by the state legislature is to name and change the name of any street. Sections 1 and 23, Article 5, chapter 24, pages 323 and 324, Cahill's 1933 Statutes. By section 23 city councils are empowered ''To name and change the name of any street, avenue, alley or other public place.''

The defendants contend that the authority to change the name of streets is exclusively the province of city councils; that the act is legislative and not judicial. This contention is admitted by complainants with the qualification that the action of the city council must be reasonable and that whether an ordinance naming or changing the name of a street is reasonable, is judicial.

Where an ordinance is passed by a city council pursuant to an express power granted by the legislature, it cannot be set aside by courts because they may think it unreasonable. *Block v. City of Chicago,* 239 Ill. 251; *City of Chicago v. Ripley,* 249 Ill. 466; *City of Litchfield v. Thorworth,* 337 Ill. 469.

In the *Block* case Mr. Chief Justice Cartwright, in delivering the opinion of the court, said (p. 260): ''Where an ordinance is passed in pursuance of an express power to pass an ordinance of that character, it cannot be set aside by the courts because they may deem it unreasonable. (*City of Peoria v. Calhoun,* 29 Ill. 317; Dillon on Mun. Corp., sec. 262.)''

Under the authorities above mentioned, we hold that the power to name and change the name of streets in Chicago is exclusively in the city council and that in the instant case the act of the city council in passing the ordinance, which was approved by the mayor, changing the name of Crawford avenue to Pulaski

Road is a legislative act not subject to review by the courts. This same view has been announced by the Supreme Courts of New Jersey and Washington. *Darling v. Jersey City,* 80 N. J. L. 514; *Eldridge v. Fawcett,* 128 Wash. 615.

In the *Darling* case it was sought to set aside an ordinance of the Board of Trustees and Water Commissioners of Jersey City, by which a street was named "Cuneo Place" which had theretofore been known as "Booraem avenue," and it was held that the act was legislative and not judicial. In that case it was said that the legislature had conferred upon the Board of Street and Water Commissioners exclusive authority over streets and " 'all matters and things in anywise appertaining to the use' thereof . . .''; that "Streets are named because it has been found to be useful, i. e., to add to their use, not of course in the same sense that a pavement adds to such use, but in the sense of a matter that appertains in some wise to such use. . . . The contrary cannot well be urged by the prosecutor in view of his claim that the calling of this street by one name rather than by another materially affects its use for the purposes for which he has built upon it. We conclude that the power to name the streets of Jersey City passed to and resides in its board of street and water commissioners.

"The basis of the prosecutor's other contention is that the action of which he complains was judicial. We think this is not so in fact." The court then says the fact that the street had been known by another name although not officially, "did not abrogate the authority granted by the legislature to the local municipal board either by frustrating the exercise of its legislative power or by conferring upon the prosecutor a vested right to have such power exercised in a particular way. The exercise of such power, in the present case, may be one for which we cannot discover any adequate reason without its being unreasonable in the

sense that subjects it to judicial supervision, either on the ground that it was uncalled for and unwise or because of the two names one was the more appropriate or euphonious. These are legislative questions, and the right of a citizen to have his representatives in a legislative body act wisely and properly is a political and not a legal right and to be redressed accordingly.''

So, in the instant case, whether the aldermen acted wisely and properly is a political and not a legal question.

In the *Eldridge* case, *supra,* it was held that the City of Tacoma had the right to change the name of a residential street by an ordinance and that the act was legislative and not judicial. In that case the name of a residential street in Tacoma was changed by an ordinance without the consent of the owners of property abutting on the street and on appeal to the Supreme Court by objecting owners it was held that the courts could not interfere. The court there referred to a statute of that State which provided that any city adopting a charter under the provisions of the statute should have such powers as are usually exercised by municipal corporations of like character. The City of Tacoma afterward adopted a charter, section 4 of which is as follows: ''The City of Tacoma shall have power: . . . 44. To provide for naming streets and numbering houses.'' The court held that this gave power to the city to change the name of the street in question, and continuing said (p. 617): ''Considerable complaint is made that the original name of the street was once changed, and that then the city repealed the ordinance making the change and restored the original name, now changed once more. The right to change the name of a street, however, is an attribute of legislative power which does not become exhausted by a previous exercise of that power.''

Complainants, in support of their contention that a city council, in passing an ordinance changing the name of a street, must act reasonably and that the reasonableness of such an ordinance may be inquired of by the courts, cite the cases of *Anderson v. Dublin,* 15 Law Rep. (Ireland) 410, and *Miller v. Cincinnati,* 10 Ohio Dec. (reprint) 423.

In the *Anderson* case suit was brought to restrain the corporation of Dublin from carrying into effect a resolution changing the name of Sackville street to O'Connell street. The court held that whether the proposed change was made in good faith could be inquired of in a judicial proceeding. We are not advised by that case what authority was vested in the city authorities over streets, nor are we convinced of the soundness of the reasoning of the court. But in any event it is not in accord with the law of Illinois, New Jersey or Washington, or any other state of the Union, so far as we are advised.

The decision in the *Miller* case, *supra,* was by the trial judge, and the editorial note of the case consists of but a single paragraph. It was there said (p. 424) : ''The superior court of Cincinnati has decided that the established name of a street cannot be changed by a city council, except on petition of the property holders on such street. The name of Fairfield avenue, Cincinnati, had been changed by the city council to Shenendoah avenue, and that of Warner street to Dryden street. . . . I. J. Miller, the well known lawyer, lives on Fairfield avenue, and had built himself a home there which he named 'Fairfield Place.' He filed a petition asking for a perpetual injunction against the council from changing the name of the avenue, averring that the change had been attempted without any petition for such change having been filed by any property owner on Fairfield avenue or· on Warner street, and that no good cause for such a change existed. The

city solicitor demurred. Judge Moore overruled the demurrer, and the city not desiring to plead further, a decree was granted perpetually enjoining the proposed change." It is obvious that the facts and the law governing that case are in no way analogous to the facts nor to the law which is applicable to the case at bar. Under the Ohio law, the name of a street could not be changed except upon a petition by owners of property abutting the street, and it was alleged no such petition had been filed. This was admitted by the city solicitor on demurrer. Obviously, if the law required a petition of the property owners as a prerequisite to the changing of the name of a street, and no such petition was filed, the change would be wholly unwarranted. There is no such requirement in our law, and the case is wholly inapt.

Holding as we do that the change of the name of a street is legislative and not judicial, the order of the circuit court of Cook county is reversed.

*Order reversed.*

MATCHETT, P. J., and McSURELY, J., concur.